EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* MARIO BEAUCHAMP, acusado y apelante.

No. 3530.—*Visto:* Noviembre 22, 1928. *Resuelto:* Diciembre 20, 1928.

*Angel A. Vázquez* y *J. Alemañy Sosa,* abogados del apelante; *José E. Figueras,* abogado de *El Pueblo,* apelado.

EL JUEZ ASOCIADO SEÑOR TEXIDOR, emitió la opinión del tribunal.

Mario Beauchamp fué juzgado por el jurado y la Corte de Distrito de Mayagüez, por virtud de una acusación del fiscal de distrito, en la que se le imputó que, bajo promesa de matrimonio, había seducido a la joven soltera y reputada como pura, Altagracia Irizarry, con la que tuvo actos carnales.

El jurado en este caso trajo un veredicto declarando culpable del delito imputado, al acusado Mario Beauchamp, y la corte le condenó a sufrir un año de presidio con trabajos forzados. Contra la sentencia se ha interpuesto esta apelación.

El apelante señala dos errores: uno de insuficiencia de la prueba para sostener la sentencia; y el otro en las instrucciones al jurado, cuyo error dice influyó en que se produjera el veredicto de culpabilidad.

Al argumentar el primer señalamiento se sostiene por el apelante que no se probó el estado de soltería de Altagracia Irizarry, ni su previa reputación de pura, ni que la seducción se efectuara bajo promesa de matrimonio.

En cuanto al estado de soltería de la perjudicada, es cierto que ésta no declaró nada en cuanto a ese extremo; pero la testigo Norberta Vargas, madre de Altagracia, declaró que ésta era soltera; y de las declaraciones de los testigos Olivencia y Mercader, que hablan de ella como una "señorita" honesta, se desprende esa condición de soltera que de todos modos, tendría suficiente prueba en la afirmación de un solo testigo digno de crédito.

En el caso *El Pueblo* v. *Rodríguez,* 11 D.P.R. 235, se dijo por este tribunal, lo que sigue:

"Las palabras 'una joven' y 'una mujer soltera' son sinónimas para los fines del presente caso y debemos presumir que la joven de que aquí se trata es soltera, porque si fuera casada pudo el acusado probar ese hecho y ésa hubiera sido una buena defensa. Esto mismo dijimos en el caso de *El Pueblo de Puerto Rico contra Francisco Córdova* en que fué ponente el Juez Sr. MacLeary."

No subsiste aquí la doctrina de que no sea necesario probar el estado de soltería de la ofendida. "El Pueblo de Puerto Rico tiene la obligación de probar que la seducida era soltera al tiempo de cometerse el delito," ha dicho esta corte en el caso *El Pueblo* v. *Ramos,* 29 D.P.R. 21. No sería exigible que se probara el estado por otros medios que las declaraciones de testigos que reafirman la presunción de tal soltería. Y si para los fines de un buena acusación es suficiente la expresión "una joven," como sinónima de "una mujer soltera," es indudable que la acepción corriente y constante de la palabra "señorita," que en el uso vulgar y diario se aplica por el pueblo en Puerto Rico exclusivamente a las mujeres solteras, ha de tenerse en cuenta para la estimación de la evidencia.

La reputación de pura tuvo en su apoyo las declaraciones de Santiago Mercader y Fernando Olivencia. El acusado presentó testimonio para demostrar que Altagracia Irizarry salía al cine o de paseo con algunos jóvenes, y que una noche fué con Gerónimo Baltazare a un sitio en la playa, y que allí estuvieron sentados, y les enfocó con su luz un automóvil, y que Baltazare estaba dispuesto a tener actos carnales con Altagracia, y ésta no oponía una rotunda negativa, pero en eso apareció el automóvil y les enfocó con su luz, y no pasó otra cosa. El dueño del automóvil declaró que en la noche a que se refiere el otro testigo, él fué a la playa en su automóvil, y esa noche vió a Altagracia y Baltazare, detrás de la casa de Arnaldo, conversando, como a las ocho de la noche; que esto ocurrió después de febrero de 1927, o en marzo; que a ella no la vió bien primero y luego le vió la cara. Y en cuanto a los demás testigos de descargo,

ellos hablaron de que Altagracia salía de paseo con algún joven, Rafael Suárez, y con Baltazare, pero refiriéndose en ocasiones a época posterior a la señalada por la prueba de cargo como aquella en que tuvo lugar la seducción, y en otras a época anterior. Uno de los testigos declaró que había sido novio de Altagracia, y que ésta algunas veces se ponía de acuerdo para ir al cine o a paseo con él, y luego se iba con otro, Beauchamp o Suárez; presentó unos retratos de Altagracia dedicados y dijo que ella se los había dado en marzo o abril. Altagracia, en su nueva declaración, dijo que esos retratos se los dió ella a Beauchamp.

El jurado, si la prueba era contradictoria, resolvió, en conciencia, la contradicción, en favor de la perjudicada.

No hay duda alguna de que el jurado tiene la más amplia autoridad para la apreciación de la prueba, y la solución de las contradicciones reales o aparentes en la misma. Y la tenía en este caso como en cualquier otro.

Conviene recordar aquí que en casos en que, al tratarse de la reputación de una mujer el hecho de que algunos testigos declaren que aquélla no les merece el mejor concepto, mientras otros afirman que gozaba de buena reputación, no imputándole ninguno actos que abiertamente contradigan su honestidad, no es suficiente para estimar que esa mujer no estuviera reputada por pura (El Pueblo v. Cabranes, 7 D.P. R. 303). Y aun, en un caso en que el acusado ha presentado prueba para demostrar que la ofendida había tenido relaciones con un hombre, y con él había vivido como su concubina, no quita al jurado su facultad para creer, o no, en tal prueba, sin que el no darle crédito sea error alguno.

█ La parte apelante señala como errores la instrucción que el juez de la corte dió al jurado acerca de la castidad, en la siguiente forma:

"Castidad, en el caso de una mujer soltera, significa que ella es *virgo intacta*; y cualesquiera que fueran las familiaridades anteriores, libertades y demás, y lo intensas que hayan sido, permitidas por ella, hasta tanto que ella no haya rendido su persona hasta ser

seduc'da por el acusado bajo promesa de matrimonio, de ello no se puede deducir que ha sido no casta o que no ha sido una mujer soltera de carácter casto previamente, dentro de la significación del estatuto.''

Convenimos en que la instrucción es errónea, en parte, al menos. Está declarado que no es preciso probar que la ofendida era virgen cuando se cometió el delito (El Pueblo v. Santos, 8 D.P.R. 366; El Pueblo v. Millán, 27 D.P.R. 862). Pero, de todas maneras, la instrucción así dada no perjudicaba los derechos del acusado, y antes bien ponía a El Pueblo en la necesidad de probar que la ofendida era virgen intacta cuando el delito se cometió. El error, por consiguiente, no perjudicó al aquí apelante.

En lo que atañe a la promesa de matrimonio, y a su influencia en la entrega de la mujer, hay que diferenciar entre la prueba de la promesa, como un hecho que puede ser conocido por persona distinta a la misma ofendida, y la influencia de tal promesa en la que la recibe, como algo que es puramente personal, y que no trasciende a otros. Sostiénese, por esto, la posible necesidad de la corroboración del testimonio de la ofendida, en cuanto al hecho de la promesa. En este caso Altagracia Irizarry declaró afirmativamente acerca de la promesa, previa a su entrega carnal; y su declaración se corrobora con la de Julia Josefa Rosas, y con la carta que Beauchamp escribió a Altagracia, en la que le comunica que él ya no tiene que cumplir promesas.

En el caso El Pueblo v. Santos, 8 D.P.R. 366, ha sostenido este tribunal que en estos casos la evidencia será considerada suficiente cuando las circunstancias son tales que justifican la conclusión o creencia de que el acto no se habría realizado excepto bajo la promesa de matrimonio; y si aparece que el acusado visitaba la casa de la ofendida en concepto de novio, y que la familia consideraba que entre ellos había una promesa de matrimonio, y ese hecho no ha sido contradicho por cualesquiera circunstancias, eso será suficiente

para considerar que la seducción se llevó a cabo bajo promesa de matrimonio.

No encontramos que se hayan cometido los errores que por el apelante se señalan.

*La sentencia apelada debe ser confirmada.*